## STATE OF OREGON,
*Respondent,*

*v.*

## BRYAN GENE MILES,
*Appellant.*

0103-31747; A116636

104 P3d 604

David C. Degner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter A. Ozanne, Executive Director, Office of Public Defense Services.

Robert B. Rocklin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

ORTEGA, J.

## ORTEGA, J.

Defendant appeals a judgment convicting him of manufacturing a controlled substance, marijuana, contending that the trial court erred in barring him from asserting the "medical marijuana" defense provided in ORS 475.319(1) and the "choice-of-evils" defense provided in ORS 161.200. We affirm.

■   We review the record to determine whether defendant presented any evidence to support the defenses he sought to assert and evaluate that evidence in the light most favorable to defendant. *State v. Brown,* 306 Or 599, 605, 607, 761 P2d 1300 (1988).

In November 2000, police officers searched defendant's residence and found dried marijuana, three small marijuana plants, smoking devices, and related paraphernalia, including grow lights. Based on that evidence, defendant was charged the following March with manufacturing a controlled substance.

Before trial, the state moved to preclude defendant from asserting the medical marijuana defense and the choice-of-evils defense. At an evidentiary hearing regarding those issues, defendant asserted—and the state does not dispute—that defendant suffers from several debilitating medical conditions that cause him significant abdominal and bladder pain and nausea. Although defendant takes several prescribed medications for those conditions, he maintains that the medications produce adverse side effects that marijuana does not produce and that the medications do not relieve his pain and nausea as effectively as marijuana does. He testified that at one point he went without marijuana for three months, but his symptoms grew more severe and he had to take more pain medication. Because he believes the pain medication is addictive, he prefers marijuana.

In December 1998 and again in June 1999, defendant asked his longstanding primary care physician, Dr. Zukowski, to write a letter recommending marijuana use for treatment of his symptoms. Zukowski declined on both

occasions and, according to defendant's testimony, told defendant that marijuana was "not appropriate" for his medical condition and specifically advised him against using it. A gastroenterologist and a urologist who treated defendant likewise declined to endorse defendant's use of marijuana.

In April 2001—several months after the search of his residence that led to these proceedings—defendant mailed a packet of materials to Dr. Leveque, an osteopathic physician and forensic toxicologist who testified that his practice was limited to "forensic toxicology and also to helping people get medical marijuana cards." The packet contained defendant's own written statement of his medical history and letters from two of his doctors describing his medical condition. Based solely on the written materials that defendant sent him, Leveque signed a statement supporting defendant's application for a registry identification card provided for under ORS 475.309 as part of the Oregon Medical Marijuana Act (OMMA), which excepts medical use of marijuana from criminal prosecution under certain conditions. At the time of the hearing, Leveque had helped 890 people obtain their registry identification cards.

Defendant had not succeeded in obtaining a card at the time of the hearing in September 2001. He claimed that he had not applied for a card earlier because his doctors were "too paranoid" to fill out the physician's statement necessary for an application and that his urologist had told him that Kaiser Permanente, his health insurance provider, had a policy not to allow physicians to sign such statements. However, Zukowski testified that Kaiser Permanente had no such policy. Defendant presented testimony from an additional medical expert who indicated, based on his review of defendant's records, that it would be "appropriate and reasonable" for defendant to use marijuana for pain control in place of other medications. The trial court granted the state's motions to preclude defendant from asserting the medical marijuana and choice-of-evils defenses, and defendant assigns error to those rulings.

■    We first consider the medical marijuana defense. With exceptions not relevant here, ORS 475.319(1) describes the defense, in pertinent part, as follows:

"[I]t is an affirmative defense to a criminal charge of possession or production of marijuana * * * that the person charged with the offense is a person who:

"(a) Has been diagnosed with a debilitating medical condition within 12 months prior to arrest and been advised by his or her *attending physician* the medical use of marijuana may mitigate the symptoms or effects of that debilitating medical condition;

"(b) Is engaged in the medical use of marijuana; and

"(c) Possesses or produces marijuana only in the amounts allowed in ORS 475.306(1), or in excess of those amounts if the person proves by a preponderance of the evidence that the greater amount is medically necessary as determined by the person's attending physician to mitigate the symptoms or effects of the person's debilitating medical condition."

(Emphasis added.) The only issue on appeal is whether defendant, as required under ORS 475.319(1)(a), was advised by his "attending physician" that marijuana may mitigate his symptoms. He contends that Leveque qualifies as an "attending physician" within the meaning of the statute. We reject that contention.

The OMMA defines an "[a]ttending physician" for its purposes as "a physician licensed under ORS chapter 677 who has *primary responsibility* for the care and treatment of a person diagnosed with a debilitating medical condition." ORS 475.302(1) (emphasis added).[1] Leveque never examined defendant and never reviewed his medical records; indeed, he did not recognize defendant in the courtroom. All of his information about defendant's condition came from letters written by defendant and his doctors. By contrast, Zukowski had treated defendant on a regular basis for more than a decade. Because Leveque did not have "primary responsibility" for defendant's care and treatment, he does not qualify as defendant's "attending physician" under the OMMA. Accordingly, defendant may not avail himself of the medical marijuana defense provided in ORS 475.319(1).

---

[1] The definition of "attending physician" contained in OAR 333-008-0010 was not promulgated until after the trial in this matter and therefore we do not consider it.

■    We now turn to defendant's second assignment of error, in which he asserts that he should not have been barred from asserting the choice-of-evils defense under ORS 161.200.[2] ORS 161.200(1) provides, in pertinent part:

"Unless inconsistent * * * with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a)   That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b)   The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."

Defendant asserts that his manufacture of marijuana was medically necessary to avoid an imminent private injury such that he should be provided the choice-of-evils defense under ORS 161.200. In *State v. Ownbey*, 165 Or App 132, 996 P2d 510, *adh'd to on recons*, 168 Or App 525, 7 P3d 653 (2000), *rev den*, 331 Or 584 (2001), we addressed precisely this issue. In *Ownbey,* we held that a defendant, charged with the manufacture of marijuana and claiming that marijuana was medically necessary, was not entitled to the choice-of-evils defense because to grant him the defense would have been "inconsistent with the law in existence at the time of defendant's offense." *Id.* at 136. We noted that ORS 161.200 precludes the application of the choice-of-evils defense when it would be "inconsistent * * * with some other provision of law." In interpreting that text, we stated:

---

[2] Use of the choice-of-evils defense in this context is addressed in ORS 475.319(3), which provides:

"No person engaged in the medical use of marijuana who claims that marijuana provides medically necessary benefits and who is charged with a crime pertaining to such use of marijuana shall be precluded from presenting a defense of choice of evils, as set forth in ORS 161.200, or from presenting evidence supporting the necessity of marijuana for treatment of a specific disease or medical condition, provided that the amount of marijuana at issue is no greater than permitted under ORS 475.306 and the patient has taken a substantial step to comply with the provisions of ORS 475.300 to 475.346."

> "Although the phrase 'inconsistent with some other provision of law' is not defined in ORS 161.200, the court in [*State v. Clowes*, 310 Or 686, 698, 801 P2d 789 (1990),] explained that that language means 'that the legislature's decision prevails if and when it makes specific value choices, and that 'competing values which have been foreclosed by deliberate legislative choice are excluded from the general defense of justification[.]' "

*Id.* at 135 (some internal quotation marks and citation omitted). At the time of the offense involved in *Ownbey*, Oregon voters had not yet enacted the OMMA, and the legislature, although considering legalizing marijuana for medical use in both 1993 and 1997, had declined to do so. *Id.* at 136 n 3. We reasoned that "when, as here, the legislature has already balanced the competing values that would be presented in a choice-of-evils defense and made a choice, the court is precluded from reassessing that judgment." *Id.* at 136.

Since our decision in *Ownbey*, Oregon voters enacted the OMMA; therefore, the rationale of *Ownbey* no longer supports a conclusion that a legislative judgment has been made that the choice-of-evils defense is not available under these circumstances. The OMMA provides defendants charged with the possession or manufacture of limited amounts of marijuana the choice-of-evils defense if certain prerequisites set out in ORS 475.319(3) are met. Nevertheless, because we conclude that defendant has failed to present legally sufficient evidence to be entitled to the choice-of-evils defense under ORS 161.200, we need not resolve the question of whether defendant satisfied these prerequisites.[3]

■ We have interpreted ORS 161.200(1) to require that, in order to assert the choice-of-evils defense, a defendant must present evidence that "(1) [his] conduct was necessary to avoid a threatened injury; (2) the threatened injury was imminent; and (3) it was reasonable for the defendant to

---

[3] ORS 475.319(3) provides that a defendant charged with the possession or manufacture of marijuana who claims that the marijuana provides medically necessary benefits may assert the choice-of-evils defense only if he has "taken a substantial step to comply with the provisions of [the OMMA]." Neither party, at trial or on appeal, addressed whether any of the steps taken by defendant to obtain the support of his physicians for a registry identification card constituted a "substantial step to comply" with the OMMA.

believe that the threatened injury was greater than the potential injury of his illegal actions." *State v. Seamons,* 170 Or App 582, 586, 13 P3d 573 (2000). The trial court determined that defendant failed to adduce sufficient evidence of those elements to present the defense to the jury. *See State v. Troen,* 100 Or App 442, 445-46, 786 P2d 751, *rev den,* 310 Or 791 (1990), *cert den,* 501 US 1232 (1991) (explaining that the trial court must make that threshold determination). Because we conclude that defendant has not presented evidence that his conduct was "necessary" to avoid a threatened injury, we agree and decline to address the other required elements.

For a defendant's conduct to be "necessary" to avoid a threatened injury, he must show that no other course of action was available to him but to "choose an evil." *See, e.g., Teague v. MVD,* 124 Or App 25, 860 P2d 905 (1993) (holding that, because there was substantial evidence to support the Motor Vehicles Division's finding that the defendant "had other options" besides driving while intoxicated, the defendant was precluded from asserting the choice-of-evils defense, having failed to establish the necessary factual basis for its application because "he would not have been in a position that required him to 'choose an evil' "); *State v. Webber,* 85 Or App 347, 352, 736 P2d 220, *rev den,* 304 Or 56 (1987) (holding that the defendant was not entitled to the choice-of-evils defense because the defendant failed to provide sufficient evidence as to why it was "necessary" for him to kill a deer without first obtaining a permit to do so); *State v. Waller,* 22 Or App 299, 302-03, 538 P2d 1274 (1975) (holding that the evidence was sufficient to conclude beyond a reasonable doubt that it was not "necessary" for the defendant to beat her son to prevent her male companion from doing so, stating that "[t]he facts suggest a number of reasonable alternatives rendering defendant's actions unnecessary").

In *State v. Hund,* 76 Or App 89, 708 P2d 621 (1985), *rev den,* 300 Or 477 (1986), the defendants, environmental activists convicted of disorderly conduct for obstructing a logging company's log trucks from removing previously felled old-growth timber from a loading area, sought to introduce evidence that their actions were justified under the choice-of-evils defense. The evidence showed that the logging company

had authority from the Forest Service to remove the timber and that the defendants' prior attempts to obtain federal court orders stopping the company's actions had been unsuccessful. *Id.* at 92. In upholding the trial court's refusal to admit evidence in support of the choice-of-evils defense, we explained:

> "If [the logging company's] actions were illegal, defendants had legal means available to stop them. They attempted to do so and were rebuffed. * * * That defendants, or others asserting defendants' position, had time to go to a court with power to act shows that there was no 'emergency' requiring immediate extra-legal action."

*Id.* at 92-93.

Likewise here, if marijuana manufacture was necessary to address defendant's chronic pain and nausea, as opposed to the pain relief available to him through other channels, defendant had legal means of obtaining that relief under the OMMA. Defendant failed to present evidence of an inability to follow the legal course of action—compliance with the OMMA—or that there was an " 'emergency' requiring immediate extra-legal action."

Zukowski and two other doctors to whom defendant was referred refused to recommend defendant's use of marijuana, and defendant testified that they refused to do so pursuant to a policy of defendant's insurance carrier. Although that evidence, taken in the light most favorable to defendant, suggests that defendant's use of marijuana may have been necessary despite the fact that he was rebuffed by three doctors, defendant did not present any evidence that he was foreclosed—financially or otherwise—from obtaining the necessary recommendation from another doctor. To the contrary, following defendant's indictment for the manufacture of marijuana, defendant was able to obtain authorization from Leveque that he be permitted to use marijuana to alleviate his pain and nausea. Although Leveque was not defendant's attending physician at the time he gave his authorization, defendant has not presented any evidence that Leveque could not have taken the necessary steps to become defendant's attending physician. Additionally, defendant testified that, at one point, he was able to go without marijuana for

three months. This precludes any inference that defendant was confronted with an " 'emergency' requiring immediate extra-legal action."

In short, based on the record adduced below, viewed in the light most favorable to defendant, a jury could not infer from defendant's evidence that, in order to obtain what he claimed to be medically necessary marijuana, his only choice was to engage in the illegal manufacture of marijuana.

Affirmed.