Submitted June 17, conviction on Count 3 reversed; remanded for resentencing; otherwise affirmed September 8, respondent's petition for reconsideration filed September 19 allowed by opinion November 2, 2011
See 246 Or App 410, 264 P3d 1293 (2011)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOON BUM KO,
*Defendant-Appellant.*

Washington County Circuit Court
C090146CR; A142884

263 P3d 1082

Garrett A. Richardson filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Laura S. Anderson, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Rosenblum, Senior Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals from a judgment of conviction of three counts of violating a court's stalking protective order (SPO), ORS 163.750. Defendant assigns error to the denial of his motion for a judgment of acquittal on Count 3 and the failure to give a requested jury instruction on Counts 2 and 4. Because the statement at issue did not constitute an unequivocal threat that would instill a fear of imminent, serious violence, we reverse as to Count 3. We affirm as to Counts 2 and 4 because defendant was not entitled to the requested instruction.

Defendant was charged in this case with four counts of violating an SPO.[1] The two SPOs at issue protected defendant's cousin, Chris Bae, and his uncle, Yoon Shin. The charges arise from a single incident in which defendant, while on his way into a courtroom for a second day of a trial for earlier violations of the same SPOs, contacted Bae and Shin. Count 3 alleged that defendant "did unlawfully and recklessly engage in conduct prohibited by the order by speaking with * * * Bae, the said conduct having created reasonable apprehension regarding the personal safety of * * * Bae." Count 2 alleged that defendant "did unlawfully and recklessly engage in conduct prohibited by the [SPO] by coming into the visual and physical presence of * * * Shin with the intent to intimidate * * * Shin," and Count 4 alleged that defendant engaged in the same conduct toward Bae.

We begin with defendant's challenge to the denial of his motion for a judgment of acquittal on Count 3. In reviewing the denial of a motion for a judgment of acquittal, we view the evidence in the light most favorable to the state. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). In that light, the facts pertinent to Count 3 are these. Shin, Bae, and Mintier, a Sheriff's deputy, were sitting in the hallway outside the courtroom before the second day of defendant's trial on previous SPO violations when defendant and his brother entered the hallway. Defendant, who was representing himself at the trial, looked over and, from a distance of about 40 feet, said, "It's time for grill session No. 2." He then walked

---

[1] Defendant's motion for a judgment of acquittal was granted as to Count 1.

past Shin, Bae, and Mintier. When defendant and his brother were near the courtroom door, about five feet from Bae, defendant turned and pointed at Bae. Using a harsh, angry tone and very stiff body language, defendant said, "You're going down today," and said that he would prove that Bae and Shin were the real criminals. Mintier was concerned that defendant was going to attack Bae and Shin, and another police officer who happened to be present believed that a fight was imminent. Bae also thought that defendant might engage in physical violence.

On appeal, defendant contends that his words did not amount to an unequivocal threat that instilled a reasonable fear of imminent and serious personal violence and that was objectively likely to be followed by unlawful acts. While disagreeing with the decisions, the state acknowledges that, under *State v. Ryan*, 237 Or App 317, 239 P3d 1016 (2010), *rev allowed*, 350 Or 130 (2011), and *State v. Nguyen*, 238 Or App 715, 243 P3d 820 (2010), statements that are alleged to constitute a violation of an SPO must constitute unequivocal threats that instill a fear of imminent, serious violence. The state argues that "defendant's communicative conduct here constituted an 'unequivocal threat.' "

The state's argument about defendant's "communicative conduct," however, is inconsistent with the way that Count 3 was alleged. As noted above, defendant was charged, based on a single incident, with violating the Bae SPO by "speaking with" Bae (Count 3) and by coming into Bae's visual and physical presence with the intent to intimidate Bae (Count 4). The relevant question as to Count 3, therefore, is whether defendant violated the SPO "by speaking," not whether some other aspect of defendant's conduct in conjunction with his speech, was sufficient to violate the SPO.

Here, the words spoken by defendant were not the sort of unequivocal threat required to support a conviction for violating a SPO. We decline the state's invitation to revisit our decisions in *Ryan* and *Nguyen*, and we conclude that, in this case, defendant's statements did not constitute an "unequivocal threat of the sort that makes it objectively reasonable for the victim to believe that he or she is being threatened with imminent and serious physical harm." *Ryan*, 237

Or App at 325. Accordingly, the trial court erred in denying defendant's motion for a judgment of acquittal on Count 3.

In defendant's second assignment of error, he argues that the trial court erred in declining to give his requested "choice of evils" instruction as to Counts 2 and 4.[2] Defendant contends that he entered the visual and physical presence of Shin and Bae, as alleged in Counts 2 and 4, because he had to do so to avoid committing the felony of failure to appear in court. The state responds that, because Counts 2 and 4 charged that defendant came into Bae's and Shin's physical presence "with the intent to intimidate" the victims, proving the intent alleged in those counts effectively negated a choice-of-evils defense. In the state's view, the jury found that defendant came into the victims' presence with the purpose to intimidate and thus found that his conduct was not justified. We need not reach the state's argument, because we conclude that the trial court correctly refused to give the instruction.

We review the trial court's refusal to give the requested jury instruction for legal error and review the evidence supporting the instruction in the light most favorable to defendant, who requested the instruction. *State v. Marsh*, 186 Or App 612, 614, 64 P3d 1141, *rev den*, 335 Or 655 (2003).

In the light most favorable to defendant, the incident occurred as follows. When defendant arrived for the second day of his trial, Bae and Shin were sitting with Deputy Mintier one foot away from the door to the courtroom. It was not possible for defendant to enter the courtroom without

---

[2] Defendant requested Uniform Criminal Jury Instruction 1103, which states:

"The defense of choice of evils has been raised.

"Conduct that would otherwise constitute an offense is justifiable and not criminal when:

"(1) The defendant's conduct is necessary as an emergency measure to avoid an imminent injury; and

"(2) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of the defendant's avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the law that makes [*insert charged crime*] a crime.

"The burden of proof is on the state to prove beyond a reasonable doubt that this defense does not apply."

coming into the presence of Bae and Shin, although it was possible to enter without stopping and communicating with them. In defendant's version of events, as he and his brother were walking into the courtroom, defendant stopped very briefly to speak to Shin and Bae, asserting, "You guys robbed millions." Defendant's brother said, "Haven't you ruined our lives enough?" Defendant had no intent to intimidate. He did not point at Bae, and he was not aggressive or rigid in his stance. Defendant testified, "I admit I screwed up when I made that comment, when I should have gone straight to court, but I didn't think it was a big deal because it was not a threat and the deputy was sitting there and there were other officers."

Defendant excepted to the failure to give the choice-of-evils instruction. The trial court had earlier explained, in the course of denying defendant's motion for a judgment of acquittal on Counts 2 and 4 on the basis of a choice-of-evils defense, that defendant had gone beyond the scope of conduct necessary to appear in court.

The choice-of evils instruction arises under ORS 161.200, which provides:

"(1)   Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a)   That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b)   The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

"(2)   The necessity and justifiability of conduct under subsection (1) of this section shall not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder."

To assert that defense, a defendant must present evidence that " '(1) [his] conduct was necessary to avoid a threatened injury; (2) the threatened injury was imminent; and (3) it was reasonable for the defendant to believe that the threatened injury was greater than the potential injury of his illegal actions.' " *State v. Miles*, 197 Or App 86, 92-93, 104 P3d 604, *rev den*, 338 Or 488 (2005) (quoting *State v. Seamons*, 170 Or App 582, 586, 13 P3d 573 (2000); brackets in *Miles*). For conduct to be "necessary" to avoid a threatened injury, the defendant must show that he did not have another available course of action. *Miles*, 197 Or App at 93 (concluding that the defendant's act of possessing marijuana without a medical marijuana card was not necessary where the defendant had the alternative of obtaining a card); *see also Teague v. MVD*, 124 Or App 25, 860 P2d 905 (1993) (deciding that the choice-of-evils defense to suspension of driver's license for driving while intoxicated was unavailable where it was possible to avoid the threatened injury by walking away rather than driving).

Here, defendant's admission that he could have entered the courtroom without stopping—thereby coming into the victims' presence for a more limited period of time—precludes any finding that defendant lacked an alternative to the "evil" at issue. Assuming without deciding that the other requirements for a choice-of-evils instruction were met, defendant exceeded the scope of the conduct necessary to avoid a failure to appear charge when he stopped to engage the victims. His conduct thus was not necessary to avoid the evil of failure to appear, and the trial court's refusal to give a choice of evils instruction was not error.

Conviction on Count 3 reversed; remanded for resentencing; otherwise affirmed.