Argued and submitted December 22, 2011, affirmed December 5, 2012

STATE OF OREGON,
*Plaintiff-Respondent*,

*v.*

EDWARD MARTIN CESPEDES-RODRIGUEZ,
aka Edward M. Cespedes,
*Defendant-Appellant.*

Multnomah County Circuit Court
090747995; A144008

294 P3d 493

David J. Celuch argued the cause and filed the brief for appellant.

Pamela J. Walsh, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

After a bench trial, defendant was convicted of failure to perform the duties of a driver, ORS 811.700. Defendant appeals, arguing that the state produced insufficient evidence to disprove his choice of evils defense beyond a reasonable doubt. We conclude that the evidence was sufficient to disprove that defense and, accordingly, affirm.

We state the facts in the light most favorable to the state. *State v. Baranovich*, 241 Or App 280, 282, 249 P3d 1284, *rev den*, 350 Or 571 (2011). Defendant was driving in downtown Portland when he rear-ended and damaged a pedicab,[1] causing its operator, Altermatt, to fall to the ground. Defendant, who, according to Altermatt, smelled of alcohol and appeared intoxicated, remained inside his car following the accident and offered Altermatt $100 if he could "just leave." Altermatt became visibly upset at defendant's remark and told him that she wanted his "information" and that she thought that he was drunk. Meanwhile, Altermatt's friend, Kelly, approached, stood with his hands behind his back, and calmly told defendant to get out of his car. Defendant then put his car in reverse and drove backward. Altermatt and Kelly chased the car and stood near its front hood. Kelly then hit the car multiple times with a metal object, and defendant drove forward past Altermatt and Kelly and left the scene of the accident. In the days following the accident, defendant did not contact the police or respond to repeated attempts by the police to interview him.[2]

Defendant was ultimately arrested and charged with failure to perform the duties of a driver, ORS 811.700, and recklessly endangering another person, ORS 163.195. Prior to trial, defendant notified the state that he intended to rely on a choice of evils defense. *See* ORS 161.055(3) (a defendant may raise a defense by providing notice in writing to the state before commencement of trial). At trial, defendant testified that he left the scene of the accident

---

[1] A pedicab is a tricycle with an attached passenger compartment.

[2] Defendant testified that, after he drove away, he stopped his car about a block away from the scene of the accident and called police. According to defendant, the 9-1-1 operator asked him to hold. Instead of doing that, defendant hung up and called his lawyer, who did not answer. Defendant then went home.

because Kelly was striking his car with a metal object and he was afraid for his safety. Defendant did not formally move for a judgment of acquittal. Rather, defendant argued in his closing argument that the state had failed to disprove his choice of evils defense beyond a reasonable doubt.

After noting that it had considered the choice of evils defense with respect to the count of failure to perform the duties of a driver, the trial court found defendant guilty of that charge:

> "[H]e runs into the pedibike or the bicycle and the defendant admits that, in fact, he knows he ran into the bicycle. There is no dispute about that. Admits that the victim—he didn't see exactly what happened to the victim, but she came out, so he knew there was an incident.
>
> "And then he starts to move his car and it's at that point that the intent, I think, is then clarified later when he doesn't respond to the officers, although he may not have had a duty to, I think that information is relevant, what happens the next day to whether it was his intent to leave the scene of the accident and I do believe it was his intent.
>
> "He didn't stop once he was out of the danger of the other witness and potentially the victim, which I'll get to in just a moment. So I do feel there are sufficient facts proven beyond a reasonable doubt to show that the defendant was intending to leave the scene of the accident after the first hit."

The trial court alternatively concluded that defendant "did not stop at the first opportunity, which is * * * what he was obligated to do under the duties of a driver."

In contrast, the trial court found defendant not guilty of recklessly endangering another person. The state's theory at trial was that defendant had recklessly endangered Altermatt when he drove forward past Altermatt and Kelly and left the scene. The trial court explained its verdict on that count as follows:

> "With respect to count [two], however, I find him not guilty. I think in that circumstance and I find that really the choice of evils defense applies to count [two]. * * *

"I do give credence to the defendant's testimony about—because I think it is supported by the photographs, that Mr. Kelly was coming at his car, hit it not just once, but multiple times, and that's inconsistent—the victim's testimony was inconsistent with that, but I think if facts are clear from the photos that there were multiple hits that wouldn't have happened from just one swift movement, whether it was brass knuckles, it clearly wasn't done by a fist.

"* * * * *

"So—and I do find that the defendant was backing up and trying to get away from the victim and Mr. Kelly at the time that they were surrounding his car and that that was essentially a choice of evils to move away from them.

"And I think his—he couldn't be reckless in that circumstance because I think he was trying to get away from them. * * *

"* * * * *

"And I do think that the—any recklessness that could have been established by the defendant was actually that there was a choice of evils defense that would apply to that count."

On appeal, defendant contends that the trial court "erred by finding that the state had produced evidence to disprove the 'choice of evils' defense on the failure to perform the duties of a driver charge." Defendant argues that "the evidence showed that the defense applied to both of the charges against him" and that he had no obligation under ORS 811.700[3] to stop at the first opportunity after

---

[3] ORS 811.700 provides, in part:

"(1) A person commits the offense of failure to perform the duties of a driver when property is damaged if the person is the driver of any vehicle and the person does not perform duties required under any of the following:

"(a) If the person is the driver of any vehicle involved in an accident that results only in damage to a vehicle that is driven or attended by any other person the person must perform all of the following duties:

"(A) Immediately stop the vehicle at the scene of the accident or as close thereto as possible. Every stop required under this subparagraph shall be made without obstructing traffic more than is necessary.

"(B) Remain at the scene of the accident until the driver has fulfilled all of the requirements under this paragraph.

leaving the scene of the accident. The state responds that there was sufficient evidence to show that defendant's motive in leaving the scene was to escape responsibility for the accident rather than to ensure his safety and, therefore, the trial court did not err in concluding that the state had disproved that defense beyond a reasonable doubt. We agree with the state.

The choice of evils defense arises under ORS 161.200, which provides:

"(1) Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a) That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

"(2) The necessity and justifiability of conduct under subsection (1) of this section shall not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder."

To assert a choice of evils defense, a defendant must present evidence that "(1) his conduct was necessary to avoid a threatened injury; (2) the threatened injury was imminent; and (3) it was reasonable for the defendant to believe that the threatened injury was greater than the potential injury of his illegal actions." *State v. Ko*, 245 Or App 403, 409, 263

"(C) Give to the other driver or passenger the name and address of the driver and the registration number of the vehicle that the driver is driving and the name and address of any other occupants of the vehicle.

"(D) Upon request and if available, exhibit and give to the occupant of or person attending any vehicle damaged the number of any documents issued as evidence of driving privileges granted to the driver."

P3d 1082, *adh'd to as modified on recons*, 246 Or App 410, 264 P3d 1293, *rev den*, 351 Or 507 (2011) (internal quotation marks and brackets omitted). Once a defendant has done so, the state has the burden to disprove the defense beyond a reasonable doubt. ORS 161.055(1); *State v. Olson*, 79 Or App 302, 305, 719 P2d 55 (1986). Accordingly, we review to determine whether a rational trier of fact could have found that the state disproved defendant's choice of evils defense beyond a reasonable doubt. *State v. McDaniel*, 251 Or App 345, 346, 283 P3d 414 (2012).

Here, the state presented sufficient evidence from which a rational trier of fact could conclude that the state disproved defendant's choice of evils defense beyond a reasonable doubt. Specifically, the state presented evidence that, before leaving the scene of the accident, defendant smelled of alcohol and appeared intoxicated; that defendant offered Altermatt $100 if she would allow him to "just leave" the scene of the accident; that defendant began to move his car *before* Kelly attacked the car with a metal object; and that, despite the damage done to his car, defendant failed to contact police in the days following the accident. That evidence supports the court's finding that "defendant was intending to leave the scene of the accident after the first hit," before fleeing the scene became necessary to avoid a threatened and imminent injury. *See State v. Jackson*, 30 Or App 681, 684-85, 567 P2d 1057 (1977) (evidence that "just prior to his evasive and erratic driving [the] defendant was observed making contact with a woman under surveillance by narcotics investigators" was relevant to disprove the defendant's choice of evils defense to traffic offenses "on the theory that his motivation for the attempt to elude the police might have been fear of arrest for involvement in a narcotics offense, rather than fear [for his safety]"). Accordingly, we need not consider defendant's argument that the trial court erred in alternatively concluding that defendant had an obligation under ORS 811.700 to stop at the first opportunity after leaving the scene of the accident.

Affirmed.