Submitted December 23, 2014, affirmed May 28, petition for review denied October 8, 2015 (358 Or 69)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**ROBERT JAY LUSTER,**
*Defendant-Appellant.*

Union County Circuit Court
F18232, A153268

350 P3d 575

Peter Gartlan, Chief Defender, and Daniel C. Bennett, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

Hadlock, J., concurring in part, dissenting in part.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for stalking, ORS 163.732(2), and unlawful possession of marijuana, ORS 475.864(4). In his first assignment of error, defendant contends that the trial court improperly denied his motion for judgment of acquittal on the stalking charge. We reject that assignment of error without discussion. In his second assignment of error, defendant contends that the trial court improperly barred him from using the "medical marijuana" affirmative defense set forth in ORS 475.319(1), which is part of the Oregon Medical Marijuana Act (the OMMA), ORS 475.300 to 475.346. "We review the record to determine whether defendant presented any evidence to support the defense[] he sought to assert and evaluate that evidence in the light most favorable to defendant." *State v. Miles*, 197 Or App 86, 88, 104 P3d 604 (2005). We conclude that defendant may not avail himself of the "medical marijuana" affirmative defense set forth in ORS 475.319(1) because he did not meet at least one of the requirements specified in ORS 475.319(1)(a). Accordingly, we affirm.

We begin with a brief overview of the governing law. The OMMA was adopted by Oregon voters in the 1998 general election as Ballot Measure 67. OAR 333-008-0000. Under the OMMA, "a person engaged in * * * the medical use of marijuana is excepted from the criminal laws of the state for possession * * * of marijuana" if certain requirements are satisfied. ORS 475.309(1). As relevant here, a person wishing to be excepted from such criminal laws must apply for a "registry identification card," which, once obtained, expires if it is not renewed annually. *See* ORS 475.309 (setting forth the requirements for obtaining and renewing a medical marijuana "registry identification card"). To obtain a registry identification card, a person is required to submit, among other things, "[v]alid, written documentation from the person's attending physician stating that the person has been diagnosed with a debilitating medical condition and that the medical use of marijuana may mitigate the symptoms or effects of the person's debilitating medical condition[.]" ORS 475.309(2)(a).

In addition, and as a separate matter, a person charged with "possession or production of marijuana, or any other criminal offense in which possession or production of marijuana is an element," has "an affirmative defense" to those criminal charges under the OMMA if the person meets certain requirements, which are discussed below. ORS 475.319(1). It is that affirmative defense that is at issue in this case.

In 2007, defendant began participating in the Oregon Medical Marijuana Program (OMMP) by submitting documentation to the Department of Human Services, which monitors the OMMP. That documentation included (1) a diagnosis, made by an attending physician, that defendant had a debilitating medical condition and (2) a statement from that physician that "[m]arijuana used medically may mitigate the symptoms or effects of this patient's condition." Based on that documentation, defendant received a registry identification card, which was valid for one year. Defendant renewed his card in 2008 and 2009, each time after submitting an updated diagnosis from an attending physician and a statement from that physician that "[m]arijuana used medically may mitigate the symptoms or effects of this patient's condition." Defendant's medical marijuana card expired on September 8, 2010, and defendant did not renew it.[1]

On September 22, 2010, defendant went to the office of a certified nurse practitioner, "complaining of back pain and something wrong with his finger." The nurse practitioner diagnosed defendant with "a debilitating medical condition, namely, a back injury" and "advised [him] that the medical use of marijuana may mitigate the symptoms or effects of his back injury." The nurse practitioner then forwarded his "progress notes" to Mothers Against Misuse and Abuse (MAMA), a nonprofit organization that helps its "patients understand the [OMMP] registration process, get needed medical records and schedule appointments with doctors knowledgeable about cannabis therapeutics." Although MAMA reviewed defendant's records, defendant

---

[1] The last time that defendant consulted an attending physician regarding his participation in the OMMP was May 14, 2009.

never followed up with a MAMA clinic to see a physician "for a cannabis appointment."

In May 2011, law enforcement officers searched defendant's bedroom in conjunction with the stalking investigation, and they discovered marijuana, a marijuana pipe, and a set of digital scales. Defendant was subsequently charged with, among other things, possession of marijuana.

Before trial, defendant notified the state of his intent to use the affirmative defense set forth in ORS 475.319(1), which provides:

"Except as provided in ORS 475.316 and 475.342, it is an affirmative defense to a criminal charge of possession or production of marijuana, or any other criminal offense in which possession or production of marijuana is an element, that the person charged with the offense is a person who:

"(a) *Has been diagnosed with a debilitating medical condition within 12 months prior to arrest and been advised by the person's attending physician that the medical use of marijuana may mitigate the symptoms or effects of that debilitating medical condition*;

"(b) Is engaged in the medical use of marijuana; and

"(c) Possesses or produces marijuana only in amounts permitted under ORS 475.320."

(Emphasis added.)

The state objected to that defense by way of a motion *in limine*, arguing that defendant did not meet the requirements set forth in ORS 475.319(1)(a) because he lacked a qualifying diagnosis—one that was made by an attending physician—and advice made by an attending physician within the 12-month period prior to arrest. At a hearing on the state's motion, the trial court concluded that defendant was prohibited from using the affirmative defense set forth in ORS 475.319(1), in part, because "defendant failed to provide written documentation, signed by the patient's attending physician within 12 months prior to arrest * * * reconfirming his debilitating medical condition and advising that the use of medical marijuana could perhaps mitigate his debilitating medical condition." After a bench trial,

defendant was convicted of possession of marijuana, as noted above, and defendant now appeals.

On appeal, defendant argues that the trial court erred when it prohibited him from using the affirmative defense set forth in ORS 475.319(1). First, defendant argues that the diagnosis requirement in ORS 475.319(1)(a) does not specify who must make the diagnosis, and, thus, does not require the diagnosis to be made by the person's attending physician. Accordingly, in defendant's view, he satisfied the diagnosis requirement by obtaining a diagnosis from a nurse practitioner within 12 months prior to his arrest. Second, defendant argues that the advice requirement in ORS 475.319(1)(a) does not specify when the advice must be given, and, thus, does not require that the advice must be given within 12 months prior to arrest. Accordingly, in defendant's view, he satisfied the advice requirement by obtaining advice from an attending physician, even though that advice was given more than 12 months prior to his arrest. The state responds that defendant may not use the affirmative defense because "the OMMA requires current diagnosis and advice from a patient's attending physician for the lawful use of medical marijuana." (Footnote omitted.)

Because the dispute in this case centers on whether defendant met the requirements of ORS 475.319(1)(a), which was passed by initiative, our task is to determine the intent of the voters, using the methods outlined in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). *See PGE*, 317 Or at 612 n 4 (noting that the *PGE* methodology "applies, not only to statutes enacted by the legislature, but also to the interpretation of laws and constitutional amendments adopted by initiative"); *see also State v. Root*, 202 Or App 491, 495, 123 P3d 281 (2005) (using the *PGE* methodology as a "template" to construe ORS 475.319(1)). We thus examine the statutory text and context, and, where it is helpful, legislative history. *Gaines*, 346 Or at 171-73.

As noted, the text of ORS 475.319(1)(a) requires that, in order to make use of the "medical marijuana" affirmative defense, a person must have been "diagnosed with a debilitating medical condition within 12 months prior to

arrest *and* been advised by the person's attending physician that the medical use of marijuana may mitigate the symptoms or effects of that debilitating medical condition[.]'" (Emphasis added.) As can be seen from the plain text of the statute, ORS 475.319(1)(a) sets forth two requirements: a diagnosis within 12 months prior to arrest, as specified by the first clause, and advice from the person's attending physician, as specified by the second clause.

We need not decide the question raised by defendant's first argument, relating to the diagnosis requirement, because, even assuming without deciding that a person other than an attending physician may make a diagnosis under the provisions of ORS 475.319(1)(a), and that defendant had such a qualifying diagnosis from his nurse practitioner in September 2010, we do not agree with defendant's second argument, that the advice requirement of ORS 475.319(1)(a) may be satisfied by advice that is based on a diagnosis that is made more than 12 months prior to arrest. Because defendant received no medical marijuana advice based on a diagnosis made within 12 months prior to arrest, he failed to meet at least one of the requirements specified in ORS 475.319(1)(a) and may not avail himself of the "medical marijuana" affirmative defense.

As an initial matter, we note that the two requirements, although set forth in two clauses, are connected by the word "and," which is conjunctive in nature. *See Lommasson v. School Dist. No. 1*, 201 Or 71, 79, 261 P2d 860 (1953), *adh'd to in part on reh'g*, 201 Or 71, 267 P2d 1105 (1954) (stating that, in general, when the word "and" is used in statutes, it is "strictly of a conjunctive * * * nature"). We further note that the phrase "debilitating medical condition" appears twice in ORS 475.319(1)(a)—once in each clause. When the phrase "debilitating medical condition" appears in the second clause, it is preceded by the word "that," which functions as a demonstrative adjective. As a result, the phrase "that debilitating medical condition" in the second clause refers back to the "debilitating medical condition" in the first clause—the one that must be diagnosed "within 12 months prior to arrest." ORS 475.319(1)(a); *see also Root*, 202 Or App at 497 (concluding that, to use the affirmative defense of medical marijuana, the defendant's

"attending physician's advice regarding the use of medical marijuana had to occur *before* the incident for which he was arrested (emphasis added)). Accordingly, we conclude that the advice given by the attending physician must be based on a particular diagnosis of a "debilitating medical condition"—the diagnosis that is made within 12 months prior to arrest—and, thus, also must be given within 12 months prior to arrest.

The dissent's disagreement with our holding is based, in part, on its view that it is not "illogical" to apply the affirmative defense in a case where "a person may have been diagnosed with a particular debilitating medical condition within the 12 months preceding the person's arrest, yet have received medical marijuana advice[2] about that same condition only earlier, and not within the pertinent year." 271 Or App at 436 (Hadlock, J., concurring in part, dissenting in part). However, if the dissent were correct, a physician's advice, once given, would be valid indefinitely. As defense counsel argued to the trial court in this case, "so long as you have an active diagnosis of a debilitating medical condition[,]" the advice "could go on in perpetuity. Forever if you've been advised by your primary care physician that the marijuana may help that." Because medical conditions—and a physician's advice about those medical conditions—can change over time, we do not think that ORS 475.319 was intended to permit that result.

The dissent's disagreement is also based, in part, on inferences it draws from a different statutory provision—ORS 475.309—which, as noted above, sets forth the requirements for obtaining and renewing a medical marijuana registry identification card. 271 Or App at 437-38 (Hadlock, J., concurring in part, dissenting in part). To support its argument, the dissent reviews the legislative history of that provision, focusing particularly on the requirements for registry identification card renewal, and then infers, based on those requirements, that the affirmative defense in ORS 475.319(1) is available to a person who has received medical

---

[2] For the sake of clarity, we use the phrase "medical marijuana advice" when responding to the dissent. *See* 271 Or App at 435 (Hadlock, J., concurring in part, dissenting in part).

marijuana advice "at some point that could be more than 12 months before arrest[.]" *Id.* at 9.

We do not find as much significance in the registry identification card renewal requirements as does the dissent. In our view, a person seeking to assert the affirmative defense is more analogous to a person applying for a registry identification card in the first instance than to a cardholder seeking renewal. There is no dispute that, when seeking to obtain a registry identification card, a person has always been required to submit, among other things, "[v]alid, written documentation from the person's attending physician stating that the person has been diagnosed with a debilitating medical condition and that the medical use of marijuana may mitigate the symptoms or effects of the person's debilitating medical condition[.]" Ballot Measure 67, codified as ORS 475.309(2)(a). Because, as the dissent correctly notes, "initial issuance of a card required an attending physician's statement regarding both diagnosis and medical marijuana advice[,]" 271 Or App at 438 (Hadlock, J., concurring in part, dissenting in part), it seems logical to infer that contemporaneous medical marijuana advice is also required for a person seeking to meet the requirements of the affirmative defense.

Moreover, to the extent that registry identification card renewal requirements may provide context to interpret the affirmative defense, we disagree with the dissent's view of those requirements. We do not agree that, prior to 2007, the OMMA required updated documentation of only a diagnosis and that cardholders "were *not* required to annually confirm that they continued to receive medical marijuana advice." 271 Or App at 440 (Hadlock, J., concurring in part, dissenting in part) (emphasis in original). Any ambiguity in what was required as part of "updated written documentation" for renewal under ORS 475.309(7)(a)(ii) (1999) may be resolved by looking to the rules that were adopted by the Department of Human Resources, Oregon Health Division, to implement that statute. OAR 333-008-0040 (4/29/99), which was adopted in 1999, required a cardholder to annually submit "confirmation that existing application information has not changed." Even if "updated written documentation" refers only to the diagnosis, the phrase using the word

"confirmation" in OAR 333-008-0040 (4/29/99) acted as a catch-all to cover all of the other information in the application for a registry identification card. Again, as noted, a person seeking to obtain a registry identification card was required to submit, among other things, "[v]alid, written documentation from the person's attending physician stating * * * that the medical use of marijuana may mitigate the symptoms or effects of the person's debilitating medical condition[.]" Ballot Measure 67, codified as ORS 475.309(2)(a). Thus, contrary to the dissent's argument, which omits reference to OAR 333-008-0040 (4/29/99), cardholders seeking renewal were required to submit annual "confirmation" that the medical use of marijuana might mitigate the symptoms or effects of the person's debilitating medical condition.

Accordingly, to the extent that ORS 475.309 provides relevant context to interpret ORS 475.319(1), we disagree with the inferences drawn by the dissent based on legislative history of those provisions. It is true that the affirmative defense, as enacted by the voters as Ballot Measure 67, did not contain a time requirement, and that the phrase "within 12 months prior to arrest" was added by the legislature in 1999. It is also true that in 2007, the card renewal requirement changed from requiring annual submission of "updated written documentation of the person's debilitating medical condition[,]" ORS 475.309(7) (1999), to requiring "updated written documentation from the cardholder's attending physician of the person's debilitating medical condition and that the medical use of marijuana may mitigate the symptoms or effects of the person's debilitating medical condition[,]" ORS 475.309(7).

But because the requirements for the registry identification card required written information about both a diagnosis and medical marijuana advice, and because the administrative rules related to renewal of the registry identification card (implementing ORS 475.309(7) (1999)) required written documentation about a diagnosis and confirmation about medical marijuana advice, the 1999 legislative amendment to Oregon Laws 1999, chapter 4, section 6 (Ballot Measure 67), later codified as ORS 475.319(1)(a), should be read as a companion to the 1999 administrative rules that were adopted during that time. As such, it is more

logical to infer that the timing requirements for the affirmative defense made by the 1999 legislative amendments brought the affirmative defense requirements (for both diagnosis and medical marijuana advice) in line with the registration and the annual renewal requirements set forth in the relevant statute and administrative rule.

Because, in this case, defendant presented no evidence that he had been advised by an attending physician that the medical use of marijuana may mitigate the symptoms of "that debilitating medical condition"—the one diagnosed by his nurse practitioner—within 12 months prior to his arrest, defendant may not avail himself of the "medical marijuana" affirmative defense set forth in ORS 475.319(1). The trial court did not err.

Affirmed.

**HADLOCK, J.,** concurring in part and dissenting in part.

The Oregon Medical Marijuana Act (OMMA) creates an affirmative defense to certain marijuana-related crimes for any person who:

"(a) Has been diagnosed with a debilitating medical condition within 12 months prior to arrest and been advised by the person's attending physician that the medical use of marijuana may mitigate the symptoms or effects of that debilitating medical condition;

"(b) Is engaged in the medical use of marijuana; and

"(c) Possesses or produces marijuana only in amounts permitted under ORS 475.320."

ORS 475.319(1). The question presented in this case is whether a person qualifies for the affirmative defense if he "[h]as been diagnosed with a debilitating medical condition within 12 months prior to arrest" but was last advised by his or her "attending physician that the medical use of marijuana may mitigate the symptoms or effects of that debilitating medical condition" more than a year before the arrest. The majority holds that such a person does not qualify for the affirmative defense; in its view, the affirmative defense is available only if the person received the attending

physician's advice about the possible benefits of medical marijuana use within the 12 months immediately preceding the person's arrest. I disagree and, therefore, respectfully dissent from the majority opinion to the extent that it affirms defendant's conviction for unlawful possession of marijuana.[1]

My disagreement with the majority's statutory analysis begins with my reading of the statutory text. As noted, the OMMA affirmative defense is available to a person who meets certain requirements, including that the person:

> "Has been diagnosed with a debilitating medical condition within 12 months prior to arrest and been advised by the person's attending physician that the medical use of marijuana may mitigate the symptoms or effects of that debilitating medical condition[.]"

ORS 475.319(1)(a). Thus, the affirmative defense may be available to a person who can establish that he or she has received two pieces of medical information: (1) diagnosis with a debilitating medical condition, and (2) advice from the person's attending physician that medical marijuana use might mitigate the symptoms or effects of that condition. For the sake of brevity, I refer to that medical information as the "diagnosis" and the "medical marijuana advice" in the remainder of this dissent.

I agree with the majority that a person can be entitled to the OMMA affirmative defense only if the person has received a diagnosis of a debilitating medical condition within the 12 months immediately preceding the person's arrest. *See State v. Luster*, 271 Or App 425, 429-30, 350 P3d 575 (2015) (so explaining). That is what the first 14 words of ORS 475.319(1)(a) say. I also agree with the majority that the two references to "debilitating medical condition" in subsection (a) of the statute refer to the *same* medical condition; the word "that" before the second occurrence of "debilitating medical condition" has that effect. It follows that the medical condition with which the person has been diagnosed (within

---

[1] I agree with the majority's decision to reject defendant's challenge to his stalking conviction. *See State v. Luster*, 271 Or App 425, 426, 350 P3d 575 (2015).

the 12 months preceding arrest) must be the same as the medical condition about which the person has received medical marijuana advice. But the majority finds significance in that congruence that I cannot. According to the majority, because the two references to "debilitating medical condition" are to the same condition, and because a person can be entitled to the affirmative defense only if he or she has received a diagnosis of that condition within the 12 months preceding arrest, it follows that the person must also have received medical marijuana advice in that same period of time. For the following reasons, I disagree.

First, the placement of the phrase "within 12 months prior to arrest" in ORS 475.319(1)(a) is significant. Again, that subsection provides that the affirmative defense may be available to a person who, among other things:

> "Has been diagnosed with a debilitating medical condition *within 12 months prior to arrest* and been advised by the person's attending physician that the medical use of marijuana may mitigate the symptoms or effects of that debilitating medical condition[.]"

ORS 475.319(1)(a) (emphasis added). The emphasized phrase follows, and naturally attaches to, what precedes it: the requirement that the person have been diagnosed with a debilitating medical condition. I see no reason to read the phrase as also modifying the "medical marijuana advice" requirement that comes later in the sentence.

Second, I do not find it illogical, as the majority appears to assume, to conclude that a person may have been diagnosed with a particular debilitating medical condition within the 12 months preceding the person's arrest, yet have received medical marijuana advice about that same condition only earlier, and not within the pertinent year. A hypothetical example may serve to illustrate my point. Suppose a person's attending physician diagnosed her in 2010 with a debilitating medical condition—say, a degenerative spine condition that causes severe pain. *See* ORS 475.302(3)(b) ("debilitating medical condition" includes a medical condition that produces "[s]evere pain"). The person's attending physician advised her, at the same time, that medical marijuana use could help ease the symptoms of

that spine condition. Although the person would have qualified for a medical marijuana card, she did not get one. In 2012, the person's diagnosis was confirmed—she still suffered the same painful degenerative spine condition. Later that year, she was arrested for possessing a small amount of marijuana. In my view, that hypothetical person might be able to establish an affirmative defense to the marijuana-possession charge because she (1) was "diagnosed with a debilitating medical condition within 12 months prior to arrest" and (2) had "been advised by the person's attending physician that the medical use of marijuana may mitigate the symptoms or effects of that debilitating medical condition." Thus, it does not seem illogical to give ORS 475.319(1)(a) its most natural reading, so that the timing requirement applies only to the diagnosis and not also to the medical marijuana advice.

Third, my interpretation of ORS 475.319(1)(a) is informed by the statute's context, in particular, how it and related OMMA provisions have developed over time. *See State v. Ziska / Garza*, 355 Or 799, 806, 334 P3d 964 (2014) ("Analysis of the context of a statute may include prior versions of the statute, including any wording changes in a statute over time." (Citations omitted.)); *Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004) (a statute's context "includes other provisions of the same statute, the session laws, and related statutes"). I begin by considering another major provision of the OMMA: ORS 475.309, which sets out requirements for obtaining the "registry identification card" that "except[s]" the cardholder from state laws criminalizing the possession, delivery, and production of marijuana under certain circumstances. As originally enacted by the voters, the OMMA provided that a person could obtain a registry identification card if the person paid a required fee and provided:

> "(a) Valid, written documentation from the person's attending physician stating that the person has been diagnosed with a debilitating medical condition and that the medical use of marijuana may mitigate the symptoms or effects of the person's debilitating medical condition;
>
> "(b) The name, address and date of birth of the person;

"(c) The name, address and telephone number of the person's attending physician; and

"(d) The name and address of the person's designated primary caregiver, if the person has designated a primary caregiver at the time of application."

ORS 475.309(2) (1999). Thus, initial issuance of a card required an attending physician's statement regarding both diagnosis and medical marijuana advice.[2]

The original OMMA, like the present version, also required cardholders to provide updated information to the state each year. Thus, in 1999, a cardholder was required to annually submit:

"(A) Updated written documentation of the person's debilitating medical condition; and

"(B) The name of the person's designated primary caregiver if a primary caregiver has been designated for the upcoming year."

ORS 475.309(7)(a)(ii) (1999).

Notably, that statutory provision required a cardholder to annually provide updated documentation only of his or her diagnosis; the cardholder was not also required to provide updated documentation of any medical marijuana advice. A similar limitation was found in subsection (8) of the statute, which required a cardholder whose attending physician diagnosed the cardholder "as no longer having a debilitating medical condition" to return the registry identification card to the state. ORS 475.309(8) (1999). No similar requirement was imposed on any cardholder who continued to suffer a debilitating medical condition, but whose attending physician no longer believed that medical marijuana use might mitigate the symptoms or effects of that condition.

---

[2] Those requirements for initial issuance of a registry identification card have remained unchanged since 1999. However, one requirement since has been added. Now, each applicant for a registry identification card must also provide a "written statement that indicates whether the marijuana used by the cardholder will be produced at a location where the cardholder or designated primary caregiver is present or at another location." ORS 475.309(2)(e). The addition of that requirement does not affect my analysis.

I next consider the wording of the OMMA affirmative defense, as initially enacted by the voters. That provision originally stated:

"(1) Except as provided [in provisions not pertinent here], it is an affirmative defense to a criminal charge of possession or production of marijuana * * * that the person charged with the offense is a person who:

"(a) Has been diagnosed with a debilitating medical condition and been advised by his or her attending physician the medical use of marijuana may mitigate the symptoms or effects of that debilitating medical condition;

"(b) Is engaged in the medical use of marijuana; and

"(c) Possesses or produces marijuana only in [certain amounts]."

Or Laws 1999, ch 4, § 6.

By requiring proof of both a diagnosis and related medical marijuana advice, that provision essentially created an affirmative defense to marijuana charges for those individuals who would have qualified for registry identification cards under the OMMA but who had, for whatever reason, not obtained them. Indeed, some people could have taken advantage of the affirmative defense even though they would *not* have been able to get (or, more precisely, retain) registry identification cards. That is because the affirmative-defense provision did not include any timing requirements; consequently, a person could establish the affirmative defense no matter how long ago the person had been diagnosed with a debilitating medical condition and received advice that medical marijuana use might help. But cardholders, as explained above, were required to provide updated diagnosis information annually.

That aspect of the OMMA affirmative defense did not escape the 1999 legislature, which quickly amended the affirmative-defense provision to include a timing requirement. As amended in 1999, the affirmative defense was available only to a person who:

"(a) Has been diagnosed with a debilitating medical condition *within 12 months prior to arrest* and been advised

by his or her attending physician the medical use of marijuana may mitigate the symptoms or effects of that debilitating medical condition[.]"

ORS 475.319(1) (1999) (emphasis added). So amended, the affirmative defense became available only to people who could have obtained *and maintained* a registry identification card over time, because they had been diagnosed with a debilitating medical condition and received medical marijuana advice about that condition at some point in the past, *and* had received a confirmed diagnosis of that debilitating medical condition within the 12 months preceding arrest.

In that historic context, it makes sense that the legislature intended the timing requirement—the "within 12 months prior to arrest" clause—to apply only to the diagnosis and not to the medical marijuana advice. In 1999, registered cardholders were required to provide the state with updated confirmation of their diagnoses each year, but were *not* required to annually confirm that they continued to receive medical marijuana advice. ORS 475.309(7) (1999). The 1999 legislative amendment of ORS 475.319(1)(a) simply brought the timing requirements for the affirmative defense in line with the annual reporting requirements that cardholders then had to meet.[3]

In 2007, the legislature amended ORS 475.309(7), with the result that a registered cardholder is now required to annually confirm both the diagnosis of a debilitating medical condition and the related medical marijuana advice:

"(7)(a)   A person who possesses a registry identification card shall:

"* * * * *

"(C)   Annually submit to the [Oregon Health Authority]:

"(i)   Updated written documentation from the cardholder's attending physician of the person's debilitating medical condition *and that the medical use of marijuana*

_____

[3] The parties have not cited, and I am not aware of, any legislative history that shines further light on the 1999 legislature's intent in adding "within 12 months prior to arrest" to ORS 475.319(1)(a).

*may mitigate the symptoms or effects of the person's debilitating medical condition*[.]"

ORS 475.309(7) (emphasis added).[4] But the legislature did not similarly amend ORS 475.319(1)(a), to make the timing requirement relate to both the diagnosis *and* the medical marijuana advice. The timing requirement in the affirmative-defense provision remains the same now as it was in 1999.

In sum, I interpret ORS 475.319(1)(a) to mean that an affirmative defense may be available to a person who (1) "has been diagnosed with a debilitating medical condition within 12 months prior to arrest" and (2) has—at some point that could be more than 12 months before arrest—"been advised by the person's attending physician that the medical use of marijuana may mitigate the symptoms or effects of that debilitating medical condition." The trial court's ruling that precluded defendant from raising the affirmative defense was based on a contrary interpretation of the statute that makes the affirmative defense available only to a person who has, within the 12 months preceding arrest, received both a diagnosis *and* related medical marijuana advice. I believe that ruling was erroneous.

Because I disagree with the majority's (and trial court's) determination that the OMMA affirmative defense is unavailable to defendant because he did not receive medical marijuana advice within the 12 months preceding his arrest, I must also consider the alternative basis on which the state argues for affirmance. The state contends that a person is entitled to pursue the affirmative defense only if the "debilitating medical condition" diagnosis that occurred within 12 months preceding the person's arrest was made by the person's attending physician. Because defendant's recent diagnosis was made by a nurse practitioner—and not defendant's attending physician—the state concludes that the trial court correctly ruled that he could not pursue the affirmative defense.

---

[4] The 2007 legislature also amended ORS 475.309(8), so that it now requires a cardholder to return the card if the cardholder's attending physician *either* has diagnosed the person "as no longer having a debilitating medical condition" or "has determined that the medical use of marijuana is contraindicated."

In that respect, too, I disagree with the state's reading of ORS 475.319(1)(a). Again, I begin with the text of the statute, which provides that the affirmative defense may be available to a person who:

> "Has been diagnosed with a debilitating medical condition within 12 months prior to arrest and been advised by the person's attending physician that the medical use of marijuana may mitigate the symptoms or effects of that debilitating medical condition[.]"

That provision does not state *who* must have diagnosed the defendant with a debilitating medical condition within the pertinent time period. Rather, it states—using the passive voice—that the person must have "been diagnosed with a debilitating medical condition within 12 months prior to arrest." In comparison, the second part of the statute, related to medical marijuana advice, provides that *that* information must come from a physician, as the person must have "been advised by the person's attending physician" that medical marijuana use could be beneficial. ORS 475.319(1)(a). To interpret the statute as requiring the diagnosis to have been made by the person's attending physician would impermissibly insert what the legislature omitted. *See* ORS 174.010 (in construing a statute, a judge should not "insert what has been omitted").

The state argues, nonetheless, that consideration of statutory context reveals that the affirmative defense is available only to people whose attending physicians have diagnosed their debilitating medical conditions. Otherwise, the state argues, medical marijuana use would be permissible "based on a diagnosis from an unqualified individual." I disagree because I have found nothing in the OMMA that requires the diagnosis of a debilitating medical condition to have been made by the debilitated person's attending physician, rather than by another qualified medical professional, like a nurse practitioner who has diagnostic authority.[5] To

---

[5] Nurse practitioners are authorized to diagnose at least certain medical conditions. *See* ORS 678.010(6) (defining "[n]urse practitioner" to mean "a registered nurse who has been certified by the board as qualified to practice in an expanded specialty role within the practice of nursing"); ORS 678.010(8) (defining the practice of nursing to include "diagnosing and treating human responses to actual or potential health problems"); ORS 678.380(1) (authorizing Oregon State Board of

the contrary, although various OMMA provisions require a cardholder's attending physician to state or certify that the cardholder *has been* diagnosed with a debilitating medical condition, nothing requires that the attending physician have made that diagnosis himself or herself. *See, e.g.*, ORS 475.302(1) (defining "[a]ttending physician" as a licensed physician "who has primary responsibility for the care and treatment *of a person diagnosed with* a debilitating medical condition" (emphasis added)); ORS 475.309(2)(a) (requiring a cardholder applicant to provide "documentation from the person's attending physician stating that the person *has been diagnosed* with a debilitating medical condition" (emphasis added)).

Moreover, the OMMA does explicitly describe some duties that fall to the attending physician, and not to other health care professionals. For example, the Oregon Health Authority must verify that a person applying for a registry identification card has "consult[ed] with an attending physician regarding the medical use of marijuana." ORS 475.309(5)(b)(A). Similarly, a person under 18 years of age cannot obtain a registry identification card unless his or her attending physician has explained, both to that young person and to the young person's custodial parent or legal guardian "the possible risks and benefits of the medical use of marijuana." ORS 475.309(3)(a). And, as pertinent here, a person may qualify for the OMMA affirmative defense only if the person has "been advised *by the person's attending physician* that the medical use of marijuana may mitigate the symptoms or effects of" the person's debilitating medical condition. ORS 475.319(1)(a) (emphasis added). Thus, the OMMA appears to contemplate that a person who wishes either to obtain a registry identification card or to raise the OMMA affirmative defense must have received *advice* from his or her attending physician about the possible benefits of

Nursing to adopt rules that "establish categories of nurse practitioner practice and define the scope of such practice"); OAR 851-050-0005(4) ("[w]ithin his or her medical specialty, the nurse practitioner is responsible for managing health problems encountered by the client and is accountable for health outcomes," the process of which includes "[d]iagnosis"); OAR 851-050-0005(5) (nurse practitioners are "independently responsible and accountable for the continuous and comprehensive management of a broad range of health care," which may include "[d]iagnosis of health/illness status").

medical marijuana use, but could have been *diagnosed* by another professional who has diagnostic authority.[6]

Accordingly, I would reject the state's argument that we should affirm the trial court's ruling on the ground that the person who diagnosed defendant's debilitating medical condition was a nurse practitioner, not defendant's attending physician. Because I also disagree with the trial court's ruling regarding the significance of the words "within 12 months prior to arrest" in ORS 475.319(1)(a), as explained above, I would reverse and remand for a new trial on the marijuana possession charge. I respectfully dissent from the majority's contrary holding.

---

[6] The Oregon Health Authority's administrative rules are consistent with my interpretation of ORS 475.319(1)(a). Like the statutes, they do not specify who must have diagnosed a person with a debilitating medical condition. Rather, the rules explain that a person's attending physician is a physician "who has primary responsibility for the care and treatment of a person *diagnosed with a debilitating medical condition*," OAR 333-008-0010(3) (emphasis added), including a physician who acts as a "consultant," having been asked by "the patient's nurse practitioner" to "examine and treat the patient." OAR 333-008-0010(23)(c).